UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------------X

BAY SHORE UNION FREE SCHOOL DISTRICT,

Plaintiff,

Civil Action No.:

-against-

THE HARTFORD INSURANCE GROUP, INC.,
HARTFORD FIRE INSURANCE COMPANY,          **COMPLAINT**
HARTFORD ACCIDENT AND INDEMNITY
COMPANY, HARTFORD CASUALTY INSURANCE
COMPANY, NEW YORK UNDERWRITERS           **JURY TRIAL**
INSURANCE COMPANY, TWIN CITY FIRE        **DEMANDED**
INSURANCE COMPANY, CONTINENTAL CASUALTY
COMPANY, CONTINENTAL INDEMNITY COMPANY,
THE CONTINENTAL INSURANCE COMPANY,

Defendants.

---------------------------------------------------------------------X

Plaintiff BAY SHORE UNION FREE SCHOOL DISTRICT ("School District", "Insured" or "Plaintiff"), by and through its attorneys, Saxe Doernberger & Vita, P.C., files this Complaint against Defendants THE HARTFORD INSURANCE GROUP, INC. ("Hartford Group"), HARTFORD FIRE INSURANCE COMPANY ("Hartford Fire"), HARTFORD ACCIDENT AND INDEMNITY COMPANY ("Hartford Accident"), HARTFORD CASUALTY INSURANCE COMPANY ("Hartford Casualty"), NEW YORK UNDERWRITERS INSURANCE COMPANY (New York Underwriters"), TWIN CITY FIRE INSURANCE COMPANY ("Twin City Fire") (collectively, "Hartford" "Insurer" or "Defendant"), and CONTINENTAL CASUALTY COMPANY  ("Continental Casualty"), CONTINENTAL INDEMNITY COMPANY ("Continental Indemnity"), THE CONTINENTAL INSURANCE COMPANY ("Continental Insurance") (collectively "CNA" "Insurer" or "Defendant"), and alleges, upon information and belief, the following:

1

## **INTRODUCTION**

1.       This is an insurance coverage action arising out of the Defendants' refusal to honor their contractual obligations to defend and/or indemnify the School District with respect to numerous claims of child sexual abuse against it.

2.       Following the 2019 passage of the New York Child Victims Act ("CVA"), which revived child sexual abuse claims that were otherwise barred by statutes of limitation, the School District received numerous claims for damages from survivors ("Claimants") of alleged child sexual abuse.

3.       Between July 2020 and September 2021, approximately forty-five Claimants filed separate lawsuits against the School District in the Suffolk County Supreme Court— eighteen of which implicate Hartford and/or CNA insurance policies (collectively, the "Underlying Actions").

4.       The Underlying Actions contain allegations of negligence against the School District based on alleged sexual offenses that occurred while the Claimants attended elementary school in the School District in the 1970s and 1980s.

5.       Within the Underlying Actions, the Claimants allege, *inter alia*, that the School District negligently provided Thomas Bernagozzi ("Bernagozzi"), a former third grade teacher of the School District, with unfettered and unsupervised access to minor boys, resulting in repeated incidents of sexual abuse that have caused physical, psychological, and emotional injuries.

6.       Defendants Hartford and CNA were the School District's primary and excess general liability insurance carriers, in some combination, during the time periods alleged in the Underlying Actions. On this basis, the School District promptly notified and tendered Complaints in the Underlying Actions and demand letters upon Hartford and CNA with respect to the claims against it.

7.      From at least 2021 to the present, Defendants Hartford and CNA have failed to honor their coverage obligations to defend and/or indemnify the School District, while repeatedly engaging in obstructive and deceitful tactics, in contravention of the CVA, and to the School District's great detriment.

8.      The Underlying Actions represent the type of substantial potential liability for which the School District purchased insurance from the Defendants decades ago. Despite this, the Defendants have failed, for four years, to honor their contractual and legal obligations, by, *inter alia*:

   a.   Failing, despite numerous requests, to respond to the School District's requests and/or issue coverage determinations in a timely manner;

   b.   Failing, despite numerous requests, to produce copies of insurance policies in effect during the time period alleged in the Underlying Actions;

   c.   Failing to confirm the existence of past insurance policies despite incontrovertible evidence of them;

   d.   Failing, despite corroborating evidence, to acknowledge that the incidents of sexual abuse alleged in the Underlying Actions occurred while their policies were in effect;

   e.   Failing to perform a thorough and diligent investigation of their coverage obligations or to seek out copies of relevant policies despite ample time, opportunity, and resources;

   f.   Failing to take any meaningful action to obtain or review pertinent materials related to the Underlying Actions;

g.  Failing to promptly defend the School District when the Underlying Actions clearly fall within the scope of their respective insurance policies;

h.  Failing to cooperate with the School District's attempts to investigate and resolve the Underlying Actions, or contribute any amount towards settlement(s);

i.  Attempting to negotiate new policy terms, conditions, and limits— including the imposition of aggregate limits that were not in effect during the time period at issue— in order to protect their interests and minimize their financial exposure;

j.  Failing to pay or contribute towards the School District's defense costs for over four years, forcing the School District to raise and expend its own money to defend and pursue coverage for the Underlying Actions;

k.  Failing to adhere to their contractual obligations to defend and indemnify the School District against the Underlying Actions when they clearly involve allegations of "occurrences" resulting in "bodily injuries";

l.  Interpreting their policies with the primary goal of disclaiming or limiting coverage as opposed to protecting their insured or cooperating with the intent of the CVA;

m.  Disclaiming and/or reserving their rights to disclaim coverage without sufficient or timely justification.

9.  Defendants Hartford and CNA have blatantly and repeatedly failed to act promptly and in utmost good faith; exercise best practices with respect to the School District and its

respective Claimants; properly perform any and all duties to defend CVA-related claims; and/or preserve, produce, and/or accurately represent relevant policy records.

10.    Defendants have engaged in a "wait-and-see" strategy in response to the passage of the CVA, wherein insurance companies routinely deny or delay their coverage obligations, while disregarding the duties owed to their policyholders, in an effort to avoid significant financial exposure or impact.

11.    Defendants have failed to timely disclaim coverage; furnish all policies or other evidence relied upon for purposes of disclaiming coverage; and/or apprise the School District, with sufficient specificity, of the grounds upon which their disclaimers are predicated.

12.    The School District has suffered, and will continue to suffer, substantial harm as a direct and proximate result of the Defendants' wrongful actions as set forth herein.

13.    By this action, the School District seeks a declaratory judgment in favor of insurance coverage, as well as redress for the Defendants' breach of contract, breach of the implied covenant of good faith and fair dealing, and violation of New York General Business Law § 349(a), which prohibits the deceptive acts and practices alleged herein.

## THE PARTIES

14.    Plaintiff Bay Shore Union Free School District is a public school district with a principal place of business located at 75 West Perkal Street, Bay Shore, New York.

15.    Plaintiff Bay Shore Union Free School District includes Mary G. Clarkson ("Clarkson") Elementary School, located at 1415 E 3rd Avenue, Bay Shore, New York, and Gardiner Manor ("Gardiner") Elementary School, located at 125 Wohseepee Drive, Bay Shore, New York.

16.    Defendant Hartford Fire was and is a foreign corporation organized under the laws of the State of Connecticut, with a principal place of business located at One Hartford Plaza, Hartford, Connecticut, authorized to conduct business in the State of New York. Defendant Hartford Fire is a citizen of the state of Connecticut.

17.    Defendant Hartford Accident was and is a foreign corporation organized under the laws of the State of Connecticut, with a principal place of business located at One Hartford Plaza, Hartford, Connecticut, authorized to conduct business in the State of New York. Defendant Hartford Accident is a citizen of the state of Connecticut.

18.    Defendant Hartford Casualty was and is a foreign corporation organized under the laws of the State of Indiana, with a principal place of business located at One Hartford Plaza, Hartford, Connecticut, authorized to conduct business in the State of New York. Defendant Hartford Casualty is a citizen of the state of Connecticut.

19.    Defendant New York Underwriters was a foreign corporation organized under the laws of the State of Tennessee, with a principal place of business located at 500 James Robertson Pkwy, Nashville, Tennessee, authorized to conduct business in the State of New York. Defendant New York Underwriters is a citizen of the state of Tennessee.

20.    Defendant Twin City Fire was and is a foreign corporation organized under the laws of the State of Indiana, with a principal place of business located at One Hartford Plaza, Hartford, Connecticut, authorized to conduct business in the State of New York. Defendant Twin City Fire is a citizen of the state of Connecticut.

21.    Defendant Continental Casualty is a foreign corporation organized under the laws of the State of Illinois, with a principal place of business located at 151 N Franklin St., Chicago,

Illinois, authorized to conduct business in the State of New York. Defendant Continental Casualty is a citizen of the state of Illinois.

22.     Defendant Continental Indemnity is a foreign corporation organized under the laws of the State of Iowa, with a principal place of business located at 10805 Old Mill Road, Omaha, Nebraska, authorized to conduct business in the State of New York. Defendant Continental Indemnity is a citizen of the state of Nebraska.

23.     Defendant Continental Insurance is a foreign corporation organized under the laws of the State of Pennsylvania, with a principal place of business located at 151 N Franklin St., Chicago, Illinois, authorized to conduct business in the State of New York. Defendant Continental Insurance is a citizen of the state of Illinois.

## JURISDICTION & VENUE

24.     This Court has personal jurisdiction over Hartford Group because, among other reasons, Hartford Group is an insurance company authorized to transact business in the State of New York and does so conduct business in the State of New York.

25.     This Court has personal jurisdiction over Hartford Fire because, among other reasons, Hartford Fire is an insurance company authorized to transact business in the State of New York and does so conduct business in the State of New York.

26.     This Court has personal jurisdiction over Hartford Accident because, among other reasons, Hartford Accident is an insurance company authorized to transact business in the State of New York and does so conduct business in the State of New York.

27.     This Court has personal jurisdiction over Hartford Casualty because, among other reasons, Hartford Casualty is an insurance company authorized to transact business in the State of New York and does so conduct business in the State of New York.

28.     This Court has personal jurisdiction over New York Underwriters because, among other reasons, New York Underwriters is an insurance company authorized to transact business in the State of New York and does so conduct business in the State of New York.

29.     This Court has personal jurisdiction over Twin City Fire because, among other reasons, Twin City Fire is an insurance company authorized to transact business in the State of New York and does so conduct business in the State of New York.

30.     This Court has personal jurisdiction over Continental Casualty because, among other reasons, Continental Casualty is an insurance company authorized to transact business in the State of New York and does so conduct business in the State of New York.

31.     This Court has personal jurisdiction over Continental Indemnity because, among other reasons, Continental Indemnity is an insurance company authorized to transact business in the State of New York and does so conduct business in the State of New York.

32.     This Court has personal jurisdiction over Continental Insurance because, among other reasons, Continental Insurance is an insurance company authorized to transact business in the State of New York and does so conduct business in the State of New York.

33.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 in that it is a civil action between citizens of different states, and the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interests and costs.

34.     Venue in this district is proper under 28 U.S.C. § 1391(b)(1), 28 U.S.C. § 1391(b)(2) and 28 U.S.C. § 1391(c)(2) because this is a judicial district in which the Hartford and CNA Defendants reside, Defendants are subject to the Court's personal jurisdiction, and this is a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred.

## FACTUAL BACKGROUND

### I.    Child Victims Act

35.    On February 14, 2019, New York enacted the Child Victim's Act ("CVA"), codified under CPLR 214-g, which revived the time to commence certain civil actions arising from sexual offenses.

36.    The CVA provided a two-year window of time, commencing on August 14, 2019, during which survivors of alleged childhood sexual abuse were permitted to file lawsuits relating to such abuse, despite the expiration of the original limitations period.

37.    On September 12, 2019, in preparation for the influx of claims expected as a result of the CVA, and given the sensitive nature of the claims, the New York State Department of Financial Services issued a directive to all authorized property and casualty insurers in New York, Insurance Circular Letter No. 11 (2019), wherein insurers were expected, *inter alia*, to:

      a.    Assess their exposures and act in good faith to address their liabilities;

      b.    Cooperate fully with the intent of the CVA;

      c.    Act in utmost good faith and take the initiative to be cooperative so that victims may be compensated;

      d.    Act promptly, not extending unnecessarily to the maximum time periods permissible;

      e.    Exercise best practices with prior and current policyholders and their respective claimants, including properly performing any and all duties to defend CVA-related claims;

f.  Exert diligence to seek out copies of relevant policies of current and prior policyholders and fairly review such policies, interpreting such contracts so as to resolve any ambiguities in the policyholders' favor;

g.  In the case of lost policies, act in utmost good faith to preserve and provide any relevant records to policyholders and other entitled persons, whether in connection with any lawful discovery process or otherwise;

h.  Affirmatively contact the relevant policyholders with assessments promptly (even before a claim is filed, whenever possible) to assist policyholders in considering their coverage, and cooperate in addressing complaints as they are filed;

i.  Perform on their duties to defend policyholders;

j.  Promptly and fairly settle all claims; assist in the processing of claims; refrain from demanding verification of facts without good reason; clearly inform the claimant of the insurer's position regarding any disputed matter; and respond promptly to all communications from insureds, claimants, attorneys, and any other interested persons, in accordance with § 216.0 of 11 NYCRR Part 216 (Insurance Regulation 64);

k.  Adhere to the strict time limits imposed on insurers to respond to communications, commence investigations, and notify policyholders of coverage decisions, in accordance with N.Y. Comp. Codes R. & Regs. tit. 11, § 216.4; and

l.  Adhere to the standards set by the New York State Insurance Law § 2601, and Insurance Regulation 64, which prohibit Insurers from engaging in unfair

claims settlement practice, including (1) knowingly misrepresenting to insurance claimants pertinent facts or policy provisions relating to the coverage at issue; and (2) not attempting in good faith to effectuate prompt, fair and equitable settlements of insurance claims submitted in which liability has become reasonably clear.

## II.    <u>Underlying Actions</u>

38.    The Underlying Actions were filed against the School District between July 2020 and September 2021 in the Supreme Court of the State of New York, County of Suffolk, as follows:

    a.    R.A. v. Bay Shore Union Free School District, et al., Index No. 614064/2021;

    b.    Richard Addonizio v. Bay Shore Union Free School District, et al., Index No. 613484/2021;

    c.    D.A. v. Bay Shore Union Free School District, et al.; Supreme Court of the State of New York, Suffolk County, NY; Index No. 613621/2021;

    d.    John Doe III v. Bay Shore Union Free School District, et al., Index No. 610404/2021

    e.    John Doe XXVII v. Bay Shore Union Free School District, et al., Index No. 615227/2021;

    f.    Martin P. Golden, III, v. Bay Shore Union Free School District, et al., Index No. 611685/2021;

    g.    John Doe XV v. Bay Shore Union Free School District, et al., Index No. 612687/2021;

    h.    John Doe VI v. Bay Shore Union Free School District, et al., Index No. 611016/2021.

    i.   Matthew Higgins v. Bay Shore Union Free School District, et al., Index No. 609328/2020;

    j.   Robert Hubbard v. Bay Shore Union Free School District, et al., Index No. 613017/2021;

    k.   John Doe v. Bay Shore Union Free School District, et al., Index No. 610223/2021;

    l.   W.K. v. Bay Shore Union Free School District, et al., Index No. 610405/2021;

    m.   John Doe XXI v. Bay Shore Union Free School District, et al., Index No. 614623/2021;

    n.   J.M. v. Bay Shore Union Free School District, et al., Index No. 610403/2021;

    o.   John Doe XXIV v. Bay Shore Union Free School District, et al., Index No. 614914/2021;

    p.   John Doe XXIX v. Bay Shore Union Free School District, et al., Index No. 615335/2021;

    q.   John Doe XI v. Bay Shore Union Free School District, et al,  Index No. 611687/2021; and

    r.   John Doe XXIII v. Bay Shore Union Free School District, et al, Index No. 612685/2021.

39.    Within the Underlying Actions, the Claimants have alleged negligence against the School District based on sexual offenses that occurred in the 1970s and 1980s, while the Claimants attended Clarkson and Gardiner Elementary Schools.

40.    The Claimants have alleged, *inter alia*, that the School District negligently provided Bernagozzi, a former third grade teacher at Clarkson and Gardiner Schools, with unfettered and

unsupervised access to minor boys, resulting in repeated incidents of sexual abuse on Clarkson and Gardiner School premises.

41.     The Claimants have alleged, *inter alia*, that Bernagozzi used his position as a teacher to befriend and groom the Claimants, their families, and the School District's employees and agents, to gain their trust and confidence.

42.     The Claimants have alleged, *inter alia,* that the incidents of sexual assault and abuse committed by Bernagozzi included, but were not limited to, kissing, performing frottage, exposing himself, fondling the Claimants' penises, genitals, and buttocks over and under the clothes, using talcum powder to fondle the Claimants' genitals, forcing the Claimants' to fondle Bernagozzi's penis, and performing oral sex on the Claimants.

43.     The Claimants have alleged, *inter alia*, that the School District and Bernagozzi had a special employer-employee relationship; and that the School District had a duty to use reasonable care in the hiring, retention, training, and supervision of Bernagozzi to prevent sexual abuse and protect the students in its care.

44.     The Claimants have further alleged, *inter alia*, that the School District was negligent, and that it breached its duties owed to the Claimants by:

> a.   allowing Bernagozzi to serve as a teacher, giving him unfettered access and opportunity to commit acts of sexual abuse without supervision, and needlessly endangering the Claimants' health, safety, and welfare;

> b.   failing to use reasonable care to provide a safe environment for the Claimants where they would be free from the unwanted sexual advances and dangerous propensities of Bernagozzi as an employee/agent of Defendants;

c.   failing to investigate, report, or take corrective action with respect to allegations of sexual misconduct by Bernagozzi;

d.   failing to protect the Claimants from sexual assault and lewd and lascivious acts committed by their agent and employee;

e.   failing to establish policies and procedures that were adequate to protect the health, safety and welfare of students and protect them from sexual abuse;

f.   failing to adopt, implement and enforce policies and procedures to protect the health, safety and welfare of students and protect them from sexual abuse;

g.   hiring, retaining and/or failing to supervise Bernagozzi when they knew or should have known that he posed a substantial risk of harm to children;

h.   failing to train administration, teachers, and staff in the prevention, identification, and reporting of child sexual abuse, including educator sexual abuse of students; and

i.   failing to warn students and parents of the danger of child sexual abuse posed by Bernagozzi.

45.    The Claimants have further alleged, *inter alia*, that as a result of the School District's negligent acts or omissions, the Claimants have suffered and continue to suffer severe and permanent psychological, emotional, and physical injuries, humiliation, and the inability to lead a normal life.

46.    The Claimants demand judgment against the School District, and seek compensatory damages, punitive damages, attorneys' fees, interest, and costs.

47.    The School District has denied all allegations asserted by the Claimants in the Underlying Actions.

III.    **Insurance Policies**

A.  **Hartford Policies**

48.    Upon information and belief, Hartford, in consideration of premiums paid by the School District, issued primary commercial general liability policies insuring the School District between at least 1973 to 1982 (hereinafter collectively, "Hartford Primary Policies").

49.    Upon information and belief, Hartford, in consideration of premiums paid by the School District, issued umbrella policies insuring the School District between at least 1973 to 1982 (hereinafter collectively, "Hartford Umbrella Policies").

50.    Upon information and belief, Hartford issued a primary Commercial General Liability Insurance Policy to the School District, bearing Policy No. 12 SMP 306076, with bodily injury limits of at least $300,000 per occurrence and no aggregate limit, from September 27, 1973 through September 27, 1974.

51.    Upon information and belief, Hartford issued a primary Commercial General Liability Insurance Policy to the School District, bearing Policy No. 12 SMP 306076, with bodily injury limits of at least $300,000 per occurrence and no aggregate limit, from September 27, 1974 through September 27, 1975.

52.    Upon information and belief, Hartford issued a primary Commercial General Liability Insurance Policy to the School District, bearing Policy No. 12 SMP 306076, with bodily injury limits of at least $300,000 per occurrence and no aggregate limit, from September 27, 1975 through September 27, 1976.

53.    Upon information and belief, Hartford issued a primary Commercial General Liability Insurance Policy to the School District, bearing Policy No. SMP 309894, with bodily

injury limits of $1,000,000 per person and no aggregate limit, from September 27, 1976 through September 27, 1977.

54.    Upon information and belief, Hartford issued a primary Commercial General Liability Insurance Policy to the School District, bearing Policy No. SMP 309894, with bodily injury limits of $1,000,000 per person and no aggregate limit, from September 27, 1977 through September 27, 1978.

55.    Upon information and belief, Hartford issued a primary Commercial General Liability Insurance Policy to the School District, bearing Policy No. SMP 309894, with bodily injury limits of $1,000,000 per person and no aggregate limit, from September 27, 1978 through September 27, 1979.

56.    Upon information and belief, Hartford issued an Umbrella Policy to the School District, bearing Policy No. 12 HU 801647, with liability limits of $2 million per occurrence and $2 million in the aggregate, from September 27, 1978 through September 27, 1979.

57.    Upon information and belief, Hartford issued an Umbrella Policy to the School District, bearing Policy No. 12 HU 302352, with liability limits of $2 million per occurrence and $2 million in the aggregate, from September 27, 1979 through September 27, 1980.

58.    Upon information and belief, Hartford issued an Umbrella Policy to the School District, bearing Policy No. 12 HU 803420, with liability limits of $2 million per occurrence and $2 million in the aggregate, from September 27, 1980 through September 27, 1981.

59.    Upon information and belief, Hartford issued an Umbrella Policy to the School District, bearing Policy No. 12 RHU DW5922, with liability limits of $2 million per occurrence and $2 million in the aggregate, from September 27, 1981 through September 27, 1982.

60.     Pursuant to the Hartford Primary Policies, and in consideration of premiums paid by the School District, Hartford was and is contractually obligated "to pay on behalf of the [School District] all sums which the [School District] shall become legally obligated to pay as damages because of … bodily injury … caused by an occurrence, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage…"

61.     Pursuant to the Hartford Umbrella Policies, and in consideration of premiums paid by the School District, Hartford was and is contractually obligated to defend the School District in any claim or suit seeking damages on account of bodily injury or property damage.

62.     Pursuant to the Hartford Umbrella Policies, and in consideration of premiums paid by the School District, Hartford was and is contractually obligated to "indemnify the [School District] for ultimate net loss in excess of the underlying limit or the self-insured retention, whichever is the greater, because of bodily injury … caused by an occurrence which takes place anywhere in the world."

**B.  CNA Policies**

63.     Upon information and belief, CNA, in consideration of premiums paid by the School District, issued primary commercial general liability policies insuring the School District between at least 1973 to 1982 (hereinafter collectively, "CNA Primary Policies").

64.     Upon information and belief, CNA, in consideration of premiums paid by the School District, issued umbrella policies insuring the School District between at least 1973 to 1982 (hereinafter collectively, "CNA Umbrella Policies").

65.      Upon information and belief, CNA issued an Umbrella Policy to the School District, bearing Policy No. RDU8890720, with liability limits of $2 million per occurrence, from September 27, 1973 through September 27, 1974.

66.      Upon information and belief, CNA issued an Umbrella Policy to the School District, bearing Policy No. RDU8890720, with liability limits of $2 million per occurrence, from September 27, 1974 through September 27, 1975.

67.      Upon information and belief, CNA issued an Umbrella Policy to the School District, bearing Policy No. RDU8890720, with liability limits of $2 million per occurrence, from September 27, 1975 through September 27, 1976.

68.      Upon information and belief, CNA issued an Umbrella Policy to the School District, bearing Policy No. RDU8890720, with liability limits of $2 million per occurrence, from September 27, 1976 through September 27, 1977.

69.      Upon information and belief, CNA issued an Umbrella Policy to the School District, bearing Policy No. RDU8890720, with liability limits of $2 million per occurrence, from September 27, 1977 through September 27, 1978.

70.      Upon information and belief, CNA issued a Primary Commercial General Liability Policy to the School District, bearing Policy No. SMP 2252587, with bodily injury limits of $1 million per occurrence and no aggregate limit, from September 27, 1978 through September 27, 1979.

71.      Upon information and belief, CNA issued a Primary Commercial General Liability Policy to the School District, bearing Policy No. IP 6516823, IP 006516823 and/or SMP 2252587, with bodily injury limits of $1 million per occurrence and no aggregate limit, from September 27, 1979 through September 27, 1980.

72.     Upon information and belief, CNA issued a Primary Commercial General Liability Policy to the School District, bearing Policy No. IP 6516823, IP 006516823, and/or 516823, with bodily injury limits of $1 million per occurrence and no aggregate limit, from September 27, 1980 through September 27, 1981.

73.     Upon information and belief, CNA issued a Primary Commercial General Liability Policy to the School District, bearing Policy No. IP 6516823, IP 006516823, and/or 516823, with bodily injury limits of $1 million per occurrence and no aggregate limit, from September 27, 1981 through September 27, 1982.

74.     Pursuant to CNA's Primary Policies, CNA was and is contractually obligated to "pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of (A) Bodily Injury … to which this insurance applies, caused by an Occurrence, and the Company shall have the right and duty to defend any suit against the Insured seeking damages on account of such Bodily Injury … even if any of the allegations of the suit are groundless, false or fraudulent and may make such investigation and settlement of any claim or suit as it deems expedient, but the Company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the Company's liability has been exhausted by payment of judgments or settlements."

75.     Pursuant to the CNA Umbrella Policies, CNA was and is contractually obligated to, *inter alia*, "indemnify the insured, with respect to any occurrence not covered by underlying insurance, or with respect to damages not covered by underlying insurance, for ultimate net loss in excess of the insured's retained limit which the insured shall become obligated to pay as damages by reason of liability imposed upon the insured by law or assumed by the insured under any contract because of personal injury … to which this coverage applies, caused by an

occurrence. The company, with respect to an occurrence not covered in whole or in part by the underlying insurance or to which there is no other insurance in any way applicable, shall have the right and duty to defend any suit against the insured seeking damages on account of such personal injury…"

IV.    **Demands for Coverage**

    A.    **As Against Hartford**

76.    From approx. June 30, 2021 to September 24, 2021, the School District, by and through counsel, sent Hartford letters for each Claimant involved in the Underlying Actions.

77.    Within its letters, the School District informed Hartford that its insurance policies were in effect during the time periods alleged by the Claimants and demanded defense and indemnity with respect to any claims or legal actions associated therewith.

78.    On August 24, 2021, Hartford disclaimed coverage, contending that no insurance coverage existed based on "a full policy search for any and all policies issued to [the School District]"

79.    On September 15, 2021, the School District notified Hartford of four Hartford insurance policies that were reportedly in effect in various years spanning 1961 through 1978.

80.    On September 15, 2021, the School District asked Hartford to reconsider its coverage position with respect to the four Hartford insurance policies identified.

81.    On September 21, 2021, the School District emailed Hartford and requested copies of Hartford insurance policies that were in effect from 1980 through 1982.

82.    On September 21, 2021, Hartford acknowledged possession of Hartford insurance policies involving the School District, but did not produce them.

83.    Hartford failed to produce any Hartford insurance policies involving the School District until January 14, 2022— 115 days after they were requested by the School District and acknowledged by Hartford.

84.    On January 18, 2022— 125 days after the School District requested reconsideration of Hartford's coverage position— Hartford disclaimed coverage.

85.    Within its coverage disclaimer dated January 18, 2022, Hartford indicated that it located an insurance policy issued to "Board of Education Union Free School District #1" but "Bay Shore Union Free School District" was not listed as insured, named insured, or additional insured on the policy.

86.    On March 30, 2023, the School District informed Hartford that it had uncovered incontrovertible evidence of the Hartford primary policies and Hartford umbrella policies spanning at least 1975 to 1981.

87.    On March 30, 2023, the School District informed Hartford that it had a complete copy of Hartford's umbrella policy issued to the School District effective 1979 to 1980.

88.    As of at least March 30, 2023, Hartford was aware that the Hartford Primary Policies covering the School District were implicated in all Underlying Actions alleging abuse from at least 1975 to 1978.

89.    As of at least March 30, 2023, Hartford was aware that the Hartford umbrella policies covering the School District were implicated in all Underlying Actions alleging abuse from at least 1978 to 1981.

90.    On March 30, 2023, the School District reiterated its demand for defense and indemnity under the Hartford primary policies and Hartford umbrella policies.

91.    On March 30, 2023, the School District requested copies of Hartford's underwriting files for periods during which Hartford was the umbrella carrier.

92.    Hartford failed to respond to the School District's demand for defense and indemnity dated March 30, 2023, or produce any of the documents requested.

93.    On March 4, 2024—nearly one year after its March 30, 2023 letter—the School District sent an additional letter to Hartford indicating that it had "discovered additional indicia of primary general liability policies issued to the District by the Hartford for the years 1961 through 1978, as well as excess/umbrella policies issued to the District by the Hartford for the years 1978 through 1982."

94.    As of at least March 4, 2024, Hartford was aware that Hartford primary policies covering the School District were implicated in all Underlying Actions alleging abuse from 1961 to 1978.

95.    As of at least March 4, 2024, Hartford was aware that Hartford umbrella policies covering the School District were implicated in all Underlying Actions alleging abuse from 1978 to 1982.

96.    On March 4, 2024, the School District reiterated its demand for defense and indemnity against Hartford, and requested any and all documents pertaining to any policy issued to the School District.

97.    Hartford failed to provide any formal response to the School District's letter dated March 4, 2024, or produce any of the documents requested by the School District.

98.    On April 24, 2024, the School District sent Hartford a letter indicating that Hartford failed to communicate with the School District in good faith concerning its coverage obligations.

99.     On April 24, 2024, the School District informed Hartford that it had advanced funds to pay for its own defense against the Underlying Actions since July 2021.

100.    On April 24, 2024, the School District demanded Hartford's production of all policies; policy forms, endorsements, and limits; applications, underwriting files, and loss runs associated with the policies; and all communications with other insurers regarding the Underlying Actions.

101.    On April 24, 2024, the School District renewed its demands for defense and indemnity under the Hartford Policies.

102.    Between April 24, 2024, and September 4, 2024, the School District reached out to Hartford on numerous occasions to reiterate its demands for defense and indemnity, request a formal coverage determination, share pertinent documents exchanged in the Underlying Actions, present the Claimants' settlement demands, and advise of a potential mediation.

103.    Despite indicating that a coverage opinion letter would be forthcoming on May 20, 2024, Hartford failed to provide a formal response to the School District's demand for defense and indemnity dated April 24, 2024.

104.    Despite its coverage obligations under the Hartford Primary Policies and Hartford Umbrella Policies, Hartford failed to cooperate with the School District's efforts to investigate and/or resolve the Underlying Actions.

105.    On September 4, 2024, the School District reiterated its demands for defense and indemnity, requested a formal coverage determination within ten days, and delineated numerous documents in Hartford's possession that remained outstanding.

106.    On November 25, 2024—despite numerous, repeated demands and nearly three years after its last coverage determination letter dated January 18, 2022—Hartford sent the School District a coverage determination letter.

107.    Within its letter dated November 25, 2024, Hartford failed to confirm the existence of certain prior policies covering the School District, but acknowledged that "there is evidence" of them.

108.    Within its letter dated November 25, 2024, Hartford contended that it was continuing to work with the School District to negotiate prior policy terms, conditions, and limits.

109.    Within its letter dated November 25, 2024, Hartford agreed to participate in a portion of the School District's defense "subject to a full and complete reservation of rights" and without "waiving its right to refuse to pay any settlement or judgment" in the Underlying Actions.

110.    Within its letter dated November 25, 2024, Hartford admitted to locating Hartford umbrella policies identified by the School District.

111.    To date, Hartford has failed to defend the School District with respect to any of the Underlying Actions.

112.    To date, Hartford has failed to indemnify the School District with respect to any of the Underlying Actions.

113.    To date, despite that settlement demands have been presented to Hartford concerning the Underlying Actions, Hartford has not engaged in discussions to resolve those claims.

**B.  As Against CNA**

114.    From approx. July 1, 2021 to September 24, 2021, the School District, by and through counsel, sent CNA letters for each Claimant involved in the Underlying Actions.

115.    Within letters spanning July 1, 2021 to September 24, 2021, the School District informed CNA that CNA insurance policies were in effect during the time periods alleged by the Claimants, and demanded defense and indemnity with respect to any claims or legal actions associated therewith.

116.    The School District presented CNA with secondary evidence of CNA insurance policies in effect during the time periods alleged in the Underlying Actions.

117.    Within correspondence from CNA to the School District dated August 2, 2021, September 21, 2021, and May 5, 2022, CNA disclaimed coverage with respect to the Underlying Actions, contending that it was unable to locate any potentially responsive policies issued to the School District.

118.    Within  correspondence from CNA to the School District dated August 2, 2021, September 21, 2021, and May 5, 2022, CNA indicated that "to the extent that it is determined that [CNA] issued responsive policy(ies) or other polices to [the School District], that policy or those policies  may contain terms, conditions, definitions, and exclusions which raise significant coverage issues for this matter," effectively preparing to disclaim or limit coverage for the School District before examining any actual policy language.

119.    CNA placed the full burden on the School District to locate all policies.

120.    Within correspondence from CNA to the School District dated August 2, 2021, September 21, 2021, and May 5, 2022, CNA requested that the School District "provide a copy of any relevant policy information sufficient to prove the terms, conditions, endorsements and limits of liability that might substantiate the existence of potentially responsive policies."

121.    On March 30, 2023, the School District identified CNA insurance policies spanning at least 1977 through 1982, which were substantiated by secondary evidence.

122.    On March 30, 2023, the School District reiterated its demands for defense and indemnity with respect to all Underlying Actions that implicated CNA Policies and requested copies of the associated underwriting files.

123.    On June 27, 2023 and June 30, 2023—approximately two years after first receiving notice of the Underlying Actions and the School District's demands for coverage—CNA indicated that it "recently discovered that it issued policies to [the School District] in effect from September 27, 1978 to September 27, 1979 and in effect for a three year period of September 27, 1979 to September 27, 1982."

124.    CNA Policy No. SMP 2252587 had been previously disregarded by CNA, including via email on or around January 7, 2022, on the basis that it "was written for an unrelated insured."

125.    On June 27, 2023 and June 30, 2023, CNA acknowledged a "period when CNA may have issued an excess policy," but would not confirm the existence of said policy.

126.    Upon acknowledging the existence of prior CNA policies, CNA attempted to impose "policy conditions" upon the School District, including aggregate limits that would effectively cap CNA's exposure.

127.    CNA attempted to impose policy limits and conditions upon the School District without providing any substantiating evidence that said conditions existed and/or were incorporated into the School District's policies during the time period at issue.

128.    To date, CNA has failed to adhere to its coverage obligations to defend and/or indemnify the School District, without reservation.

129.    To date, despite that settlement demands have been presented to CNA concerning the Underlying Actions, CNA has not resolved those claims.

## FIRST CAUSE OF ACTION
### Declaratory Judgment Against Hartford

130.    The allegations set forth in paragraphs 1 through 129 are realleged and incorporated herein.

131.    A dispute has arisen regarding the insurance coverage available to the School District under the Hartford Primary Policies and Hartford Umbrella Policies in the Underlying Actions.

132.    Pursuant to CPLR 3001, the School District requests a declaration as to the rights, status, and other legal relations existing between the School District and Hartford under the Hartford Primary Policies and Hartford Umbrella Policies.

133.    Declaratory judgment is necessary and appropriate so that the School District, in its capacity as a named insured, and Hartford, as its insurer, can ascertain their respective rights under the Hartford Primary Policies and Hartford Umbrella Policies.

134.    Upon information and belief, pursuant to the Hartford Primary Policies and Hartford Umbrella Policies, Hartford is obligated to pay for the School District's defense costs and expenses in the Underlying Actions.

135.    Pursuant to the Hartford Primary Policies and Hartford Umbrella Policies, Hartford is obligated to pay all sums that the School District becomes obligated to pay, through judgment, settlement, or otherwise, for the Underlying Actions.

136.    The allegations made in the Underlying Actions fall within the scope of coverage under the Hartford Primary Policies and Hartford Umbrella Policies and are not otherwise subject to any exclusions.

137. The Underlying Actions, and the significant potential liability arising out of such claims, implicate coverage under the Hartford Primary Policies and Hartford Umbrella Policies and trigger Hartford's obligations to defend and indemnify the School District.

138. The issuance of prompt declaratory relief by this Court is desirable and necessary to resolve the existing controversy between the parties.

**SECOND CAUSE OF ACTION**
**Breach of Contract Against Hartford**

139. The allegations set forth in paragraphs 1 through 138 are realleged and incorporated herein.

140. The Hartford Primary Policies and Hartford Umbrella Policies issued by the Hartford, under which the School District is an insured, are valid and enforceable contracts between the School District and Hartford, and were in full force and effect at all times relevant to this action and the Underlying Actions.

141. The School District paid all premiums, promptly notified Hartford of the Underlying Claims, and otherwise timely performed all obligations, conditions, covenants, or prerequisites to coverage required of it under the Hartford Primary Policies and Hartford Umbrella Policies.

142. Upon entering into insurance contracts with Hartford, the School District expected peace of mind and financial security in the event of a claim.

143. Hartford is contractually obligated to defend and indemnify the School District with respect to the Underlying Actions, which include allegations of bodily injuries resulting in damages.

144. Hartford has breached its contracts with the School District by, *inter alia*:

    a.   Failing to promptly respond to the School District's requests or issue coverage determinations in a timely manner;

    b.   Failing to acknowledge that the incidents of sexual abuse alleged in the Underlying Actions occurred while its policies were in effect;

    c.   Failing to perform a thorough and diligent investigation of its coverage obligations;

    d.   Failing to diligently search for copies of relevant policies;

    e.   Failing to take any meaningful action to obtain or review pertinent litigation materials exchanged in or related to the Underlying Actions;

    f.   Failing to promptly defend the School District in the Underlying Actions;

    g.   Failing to cooperate with the School District's attempts to investigate and resolve the Underlying Actions, or contribute any amount towards settlement;

    h.   Failing to pay or contribute towards the School District's defense costs for over four years, forcing the School District to expend its own money, raise taxes, and/or secure loans to defend and pursue coverage for the Underlying Actions;

    i.   Failing to defend and indemnify the School District in the Underlying Actions when the allegations clearly "occurrences" resulting in "bodily injuries";

    j.   Disclaiming and/or reserving its rights to disclaim coverage without sufficient or timely justification; and

    k.   All other acts or omissions to be proved at trial.

145.    Hartford has an obligation to honor the covenant of good faith and fair dealing implicit in its contractual relationship with the School District under the Hartford Primary Policies and Hartford Umbrella Policies.

146.    Hartford has breached the covenant of good faith and fair dealing by, *inter alia*:

    a.    Knowingly misrepresenting pertinent facts and/or policy provisions regarding the nature and extent of the School District's available insurance coverage under the Hartford Primary Policies and Hartford Umbrella Policies;

    b.    Failing to conduct full and proper investigations of the Underlying Actions, participate in the discovery process, or readily engage in settlement discussions in an effort to resolve CVA claims against the School District;

    c.    Routinely ignoring the School District's repeated demands for formal coverage determinations and requests for documents for over four years;

    d.    Failing, in good faith, to effectuate prompt, fair, and equitable settlements of the Underlying Actions against the School District;

    e.    Frustrating the purposes of the Policies and intent of the CVA by denying coverage without merit;

    f.    Engaging in a "wait-and-see" strategy of delaying and denying coverage in CVA-related matters to avoid significant financial exposure to the detriment of its insured;

    g.    Manufacturing illegitimate reasons to deny insurance coverage;

    h.    Deviating from industry practices by denying coverage to the School District when no reasonable insurer would have denied such coverage; and

    i.    Disclaiming coverage with gross disregard of the School District's interests.

147.    As a direct result of Hartford's breach of contract, the School District has suffered and will continue to suffer damages.

148.    As a direct and proximate result of Hartford's breach of the covenant of good faith and fair dealing, the School District has and will continue to suffer consequential damages, which were reasonably contemplated by the parties at the time the Hartford Primary Policies and Hartford Umbrella Policies were entered into.

**THIRD CAUSE OF ACTION**
**General Business Law § 349 Violations - Hartford**

149.    The allegations set forth in paragraphs 1 through 148 are realleged and incorporated herein.

150.    Hartford marketed and sold the Hartford Primary Policies and Hartford Umbrella Policies to the Plaintiff as a School District resident of the state of New York.

151.    Hartford's policies are standard form policies that are typically sold to consumers, including School Districts, in New York.

152.    Plaintiff is a "consumer" pursuant to New York General Business Law § 349, a statute designed to broadly protect consumers in the state of New York.

153.    Pursuant to General Business Law § 349, Hartford is prohibited from engaging in deceptive acts or practices in the conduct of its business.

154.    Hartford has engaged in bad faith and deceptive conduct, for four years, in violation of New York Insurance Law § 2601(a), by, *inter alia*:

    a.    Routinely ignoring communications from the School District;

    b.    Failing to respond to the School District's repeated demands for coverage determinations and requests for relevant documents;

    c.    Failing, despite numerous requests from the School District, to promptly search for and produce copies of insurance policies in effect during the time periods alleged in the Underlying Actions, or any secondary evidence of the same;

d.  Failing to perform a thorough and diligent investigation of its coverage obligations, or to seek out copies of relevant policy forms, despite ample time, opportunity, and resources;

e.  Failing to confirm the existence of past insurance policies despite incontrovertible evidence of them, including forms, declarations, and/or other corroborating documents bearing Hartford's insignia or policy numbers, which were clearly in effect during the time period(s) at issue;

f.  Attempting to negotiate new policy terms, conditions, and limits— including the imposition of aggregate limits that were not in effect during the time period at issue— in order to shirk its contractual obligations and minimize its exposure under prior policies containing no aggregate limits.

g.  Interpreting its insurance policies with the primary goal of disclaiming or limiting coverage as opposed to protecting its insured or cooperating with the intent of the CVA;

h.  Knowingly misrepresenting pertinent facts and/or policy provisions regarding the nature and extent of the School District's available insurance coverage under its insurance policies;

i.  Failing to acknowledge that the incidents of sexual abuse alleged in the Underlying Actions occurred while its insurance policies were in effect (in whole or in part), despite corroborating evidence;

j.  Failing to conduct full and proper investigations of the Underlying Actions, participate in the discovery process, or readily engage in settlement discussions in an effort to resolve CVA claims against the School District;

k.   Failing to pay or contribute towards the School District's defense costs for four years, forcing the School District to expend its own money, exhaust reserves, raise taxes, and secure loans to defend and pursue coverage for the Underlying Actions;

l.   Disclaiming and/or reserving its rights to disclaim coverage without sufficient or timely justification;

m.  Failing, in good faith, to effectuate prompt, fair, and equitable settlements of the Underlying Actions against the School District;

n.   Frustrating the purposes of its insurance policies and intent of the CVA by denying coverage without merit; and

o.   All other acts or omissions to be proven at trial.

155.   Hartford's bad faith conduct is not limited to this action, but has broader impact on consumers at large.

156.   As to other consumers in the state of New York, including School Districts, Harford has engaged in a pattern and practice of delaying, denying, and/or misrepresenting the insurance policies they entered into, in an effort to shirk its contractual obligations and reduce their financial exposure.

157.   As to other consumers in the state of New York, including School Districts, Hartford has engaged in a "wait-and-see" strategy in response to the CVA, wherein at the great detriment of its insureds, routinely and systematically delayed its coverage obligations and/or denies coverage without sufficient justification.

158.   Such deceptive tactics have been employed by Hartford to determine the full impact that the CVA will have on its bottom line, and to allow CVA-related claims to be tested in other

courts before funding its own settlements.

159.    Hartford's pattern and practice of protecting its own interests to the detriment of its insureds has frustrated the School District's ability to effectively engage in negotiations or resolve the Underlying Actions.

160.    Hartford's conduct was knowing, reckless, and willful.

161.    Hartford's conduct is in direct contravention of the CVA and the associated directives issued by the New York Department of Financial Services.

162.    Hartford's conduct was materially unfair, misleading, and constitutes deceptive acts or practices in the conduct of Hartford's business in violation of General Business Law § 349.

163.    As a direct result of Hartford's deceptive and misleading conduct and actions, Plaintiff has suffered damages.

164.    Pursuant to General Business Law § 349(h), Plaintiff is entitled to statutory relief, as well as a reasonable award of attorneys' fees.

## FOURTH CAUSE OF ACTION
### Declaratory Judgment Against CNA

165.    The allegations set forth in paragraphs 1 through 164 are realleged and incorporated herein.

166.    A dispute has arisen regarding the insurance coverage available to the School District under the CNA Primary Policies and CNA Umbrella Policies in the Underlying Actions.

167.    Pursuant to CPLR 3001, the School District requests a declaration as to the rights, status, and other legal relations existing between the School District and CNA under the CNA Primary Policies and CNA Umbrella Policies.

168.    Declaratory judgment is necessary and appropriate so that the School District, in its capacity as an insured, and CNA, as its insurer, can ascertain their respective rights under the CNA Primary Policies and CNA Umbrella Policies.

169.    Upon information and belief, pursuant to the CNA Primary Policies and CNA Umbrella Policies, CNA is obligated to pay for the School District's defense costs and expenses in the Underlying Actions.

170.    Pursuant to the CNA Primary Policies and CNA Umbrella Policies, CNA is obligated to pay all sums that the School District becomes obligated to pay, through judgment, settlement, or otherwise, for the Underlying Actions.

171.    The allegations made in the Underlying Actions fall within the scope of coverage under the CNA Primary Policies and CNA Umbrella Policies and are not otherwise subject to any exclusions.

172.    The Underlying Actions, and the significant potential liability arising out of such claims, implicate coverage under the CNA Primary Policies and CNA Umbrella Policies and trigger CNA's obligations to defend and indemnify the School District.

173.    The issuance of prompt declaratory relief by this Court is desirable and necessary to resolve the existing controversy between the parties.

## FIFTH CAUSE OF ACTION
## Breach of Contract Against CNA

174.    The allegations set forth in paragraphs 1 through 173 are realleged and incorporated herein.

175.    The CNA Primary Policies and CNA Umbrella Policies were issued by CNA, which identify the School District as an insured, are valid and enforceable contracts between the

School District and CNA, and were in full force and effect at all times relevant to this action and the Underlying Actions.

176.    The School District paid all premiums, promptly notified CNA of the Underlying Claims, and otherwise timely performed all obligations, conditions, covenants, or prerequisites to coverage required of it under the CNA Primary Policies and CNA Umbrella Policies.

177.    Upon entering into insurance contracts with CNA, the School District expected peace of mind and financial security in the event of a claim.

178.    CNA is contractually obligated to defend and indemnify the School District with respect to the Underlying Actions, which include allegations of bodily injuries resulting in damages.

179.    CNA has breached its contracts with the School District by, *inter alia:*

a.    Failing to promptly respond to the School District's requests or issue coverage determinations in a timely manner;

b.    Failing to acknowledge that the incidents of sexual abuse alleged in the Underlying Actions occurred while its policies were in effect;

c.    Failing to perform a thorough and diligent investigation of its coverage obligations;

d.    Failing to diligently search for copies of relevant policies;

e.    Failing to take any meaningful action to obtain or review pertinent litigation materials exchanged in or related to the Underlying Actions;

f.    Failing to promptly defend the School District in the Underlying Actions;

g.    Failing to cooperate with the School District's attempts to investigate and resolve the Underlying Actions, or contribute any amount towards settlement;

h.   Failing to pay or contribute towards the School District's defense costs for over four years, forcing the School District to expend its financial reserves, its own money, raise taxes, and/or secure loans to defend and pursue coverage for the Underlying Actions;

i.   Failing to defend and indemnify the School District in the Underlying Actions when they clearly involve allegations of "occurrences" resulting in "bodily injuries";

j.   Disclaiming and/or reserving its rights to disclaim coverage without sufficient or timely justification; and

k.   All other acts or omissions to be proved at trial.

180.   CNA has an obligation to honor the covenant of good faith and fair dealing implicit in its contractual relationship with the School District under the CNA Primary Policies and CNA Umbrella Policies.

181.   CNA has breached the covenant of good faith and fair dealing by, *inter alia*:

a.   Knowingly misrepresenting pertinent facts and/or policy provisions regarding the nature and extent of the School District's available insurance coverage under the CNA Primary Policies and CNA Umbrella Policies;

b.   Failing to conduct full and proper investigations of the Underlying Actions, participate in the discovery process, or readily engage in settlement discussions in an effort to resolve CVA claims against the School District;

c.   Routinely ignoring the School District's repeated demands for formal coverage determinations and requests for documents for over four years;

    d.   Failing, in good faith, to effectuate prompt, fair, and equitable settlements of the Underlying Actions against the School District;

    e.   Frustrating the purposes of the Policies and intent of the CVA by denying coverage without merit;

    f.   Engaging in a "wait-and-see" strategy of delaying and denying coverage in CVA-related matters to avoid significant financial exposure to the detriment of its insureds;

    g.   Manufacturing illegitimate reasons to deny insurance coverage;

    h.   Deviating from industry practices by denying coverage to the School District when no reasonable insurer would have denied such coverage;

    i.   Disclaiming coverage with gross disregard of the School District's interests.

182.    As a direct result of CNA's breach of contract, the School District has suffered and will continue to suffer damages.

183.    As a direct result of CNA's breach of the covenant of good faith and fair dealing, the School District has and will continue to suffer consequential damages, which were reasonably contemplated by the parties at the time the CNA Policies were issued.

## SIXTH CAUSE OF ACTION
## General Business Law § 349 Violations - CNA

184.    The allegations set forth in paragraphs 1 through 183 are realleged and incorporated herein.

185.    CNA marketed and sold the CNA Primary Policies and CNA Umbrella Policies to the Plaintiff as a School District resident of the state of New York.

186.    CNA's policies are standard form policies that are typically sold to consumers, including School Districts, in New York.

187.    Plaintiff is a "consumer" pursuant to New York General Business Law § 349, a statute designed to broadly protect consumers in the state of New York.

188.    Pursuant to General Business Law § 349, CNA is prohibited from engaging in deceptive acts or practices in the conduct of its business.

189.    CNA has engaged in bad faith and deceptive conduct, for four years, in violation of New York Insurance Law § 2601(a), by, *inter alia*:

a.    Routinely ignoring communications from the School District;

b.    Failing to respond to the School District's repeated demands for coverage determinations and requests for relevant documents;

c.    Failing, despite numerous requests from the School District, to promptly search for and produce copies of insurance policies in effect during the time periods alleged in the Underlying Actions, or any secondary evidence of the same;

d.    Failing to perform a thorough and diligent investigation of its coverage obligations, or to seek out copies of relevant policy forms, despite ample time, opportunity, and resources;

e.    Failing to confirm the existence of past insurance policies despite incontrovertible evidence of them, including forms, declarations, and/or other corroborating documents bearing Hartford's insignia or policy numbers, which were clearly in effect during the time period(s) at issue;

f.    Attempting to negotiate new policy terms, conditions, and limits— including the imposition of aggregate limits that were not in effect during the time period at issue— in order to shirk its contractual obligations and minimize its exposure under prior policies containing no aggregate limits.

g.  Interpreting its insurance policies with the primary goal of disclaiming or limiting coverage as opposed to protecting its insured or cooperating with the intent of the CVA;

h.  Knowingly misrepresenting pertinent facts and/or policy provisions regarding the nature and extent of the School District's available insurance coverage under its insurance policies;

i.  Failing to acknowledge that the incidents of sexual abuse alleged in the Underlying Actions occurred while its insurance policies were in effect (in whole or in part), despite corroborating evidence;

j.  Failing to conduct full and proper investigations of the Underlying Actions, participate in the discovery process, or readily engage in settlement discussions in an effort to resolve CVA claims against the School District;

k.  Failing to pay or contribute towards the School District's defense costs for four years, forcing the School District to expend its own money, raise taxes, and secure loans to defend and pursue coverage for the Underlying Actions;

l.  Disclaiming and/or reserving its rights to disclaim coverage without sufficient or timely justification;

m.  Failing, in good faith, to effectuate prompt, fair, and equitable settlements of the Underlying Actions against the School District;

n.  Frustrating the purposes of its insurance policies and intent of the CVA by denying coverage without merit;

o.  All other acts or omissions to be proven at trial.

190.  CNA's bad faith conduct is not limited to this action but has broader impacts on

consumers at large.

191.    As to other consumers in the state of New York, including School Districts, CNA has engaged in a pattern and practice of delaying, denying, and/or misrepresenting the insurance policies they entered into, in an effort to shirk its contractual obligations and reduce its financial exposure.

192.    As to other consumers in the state of New York, including School Districts, CNA has engaged in a "wait-and-see" strategy in response to the CVA, CNA, at the great detriment of its insureds, routinely and systematically delay its coverage obligations and/or deny coverage without sufficient justification.

193.    Such deceptive tactics have been employed by CNA to determine the full impact that the CVA will have on its bottom line, and to allow CVA-related claims to be tested in other courts before funding its own settlements.

194.    CNA's pattern and practice of protecting its own interests to the detriment of its insureds has frustrated the School District's ability to effectively engage in negotiations or resolve the Underlying Actions.

195.    CNA's conduct is knowing, reckless, and willful.

196.    CNA's conduct is in direct contravention of the CVA and the associated Directives issued by the New York Department of Financial Services.

197.    CNA's conduct is materially unfair, misleading, and constitutes deceptive acts or practices in the conduct of CNA's business, in violation of General Business Law § 349.

198.    As a direct result of CNA's deceptive and misleading conduct and actions, Plaintiff has suffered damages.

199.    Pursuant to General Business Law § 349(h), Plaintiff is entitled to a reasonable

award of attorneys' fees.

## **PRAYER FOR RELIEF**

**WHEREFORE**, the Plaintiff prays for judgment against Defendants Hartford and CNA as follows:

1.     On the First Cause of Action for Declaratory Judgment against Hartford, a declaration as to the existence of applicable Hartford Policies covering the Underlying Actions, and the extent of Hartford's coverage obligations under the Hartford Policies, including its duty to defend and indemnify the School District in the Underlying Actions.

2.     On the Second Cause of Action for Breach of Contract against Hartford, that a judgment be entered against Hartford with an award of compensatory damages in an amount to be proven at trial, consequential damages including reasonable attorneys' fees and costs, interest, and any such other and further relief as this Court may deem just and proper.

3.     On the Third Cause of Action for Deceptive Business Practices Pursuant to General Business Law § 349 against Hartford, that a judgment be entered against Hartford with an award for damages in an amount to be determined at trial, including attorney's fees and statutory penalties.

4.     On the Fourth Cause of Action for Declaratory Judgment against CNA, a declaration as to the existence of applicable CNA Policies covering the Underlying Actions, and the extent of CNA's coverage obligations under the Hartford Policies, including its duty to defend and indemnify the School District in the Underlying Actions.

5.     On the Fifth Cause of Action for Breach of Contract against CNA, that a judgment be entered against CNA with an award of compensatory damages in an amount to be proven at trial, consequential damages including reasonable attorneys' fees and costs, interest, and any such other and further relief as this Court may deem just and proper

6.      On the Sixth Cause of Action for Deceptive Business Practices Pursuant to General Business Law § 349 against CNA, that a judgment be entered against CNA with an award for damages in an amount to be determined at trial, including attorney's fees and statutory penalties.

### JURY DEMAND

Plaintiff demands a trial by jury of all issues so triable.

Dated: Trumbull, Connecticut
       May 2, 2025

                          Respectfully submitted,

                          SAXE DOERNBERGER & VITA, PC

                    By:   /s/ Tracy Alan Saxe
                          Tracy Alan Saxe, Esq. (TS-7211)
                          Eve-Lynn Gisonni, Esq. (EG-0758)
                          35 Nutmeg Drive – Ste. 140
                          Trumbull, CT 06611
                          (203) 287-2158
                          tsaxe@sdvlaw.com
                          egisonni@sdvlaw.com

                          Attorneys for Plaintiff
                          BAY SHORE UNION FREE
                          SCHOOL DISTRICT